**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.** **4:07-CV-00435**

**LEROY MUNCY, *et al.*** **DEFENDANTS**

**ORDER**

Pending is Plaintiff's Motion for Summary Judgment (Doc. No. 67). Defendant Leroy Muncy has responded (Doc. No. 74). For the reasons set out below, Plaintiff's Motion is GRANTED.

**I. BACKGROUND**

Plaintiff alleges that Defendant Leroy Muncy has not filed a federal income tax return since 1994.[1] Substitutes for returns were filed on behalf of Defendant Muncy for the years of 1994, 1995, and 1996.[2] Plaintiff asserts that as of March 1, 2007, Defendant Muncy owed $289,037.86 in unpaid taxes, penalties, and interest for the years 1994, 1995, and 1996.

On September 15, 1997, the Internal Revenue Service ("IRS") issued a notice of deficiency for Defendant Muncy's unpaid 1994 federal income tax.[3] The IRS issued notices of deficiency for Defendant Muncy's 1995 and 1996 unpaid federal income taxes on May 5, 1998.[4]

---

[1]Doc. No. 1.

[2]Doc. No. 68.

[3]*Id*.

[4]*Id*

The IRS assessed Defendant Muncy's 1994 federal income tax on March 9, 1998, and assessed Defendant Muncy's 1995 and 1996 federal income taxes on October 14, 1998.[5] A notice of federal tax liens was filed in Pope County, Arkansas, on March 21, 2005.[6]

Plaintiff alleges that Defendant Muncy is a tax protestor, and that Defendant Muncy fraudulently transferred title to three pieces of real property to avoid IRS collection efforts.[7] The three pieces of property were: a home and acreage ("Home"); 18 acres of land ("18 Acres"); and five acres of land ("Five Acres"). Defendant Muncy and his wife purchased the Home in 1984.[8] On December 19, 1998, Defendant Muncy conveyed the Home by warranty deed to James and Gwenna Brandon for $10 consideration.[9] Defendant Muncy never moved out of the Home, and the Brandons never moved into the Home.[10] The Brandons had no recollection of ever purchasing Defendant Muncy's Home.[11] On April 2, 1999, the Brandons supposedly transferred

[5]*Id*.

[6]*Id*.

[7]*Id*. Plaintiff attached to its Motion letters from Defendant Muncy to the IRS. A Letter to Robert Brown, Internal Revenue Service, dated April 7, 2005, reads, in part: "I am me, myself, a Living Soul, American Sovereign without the UNITED STATES, a non-combatant, non-filer, not a taxpayer. You do not have permission to make a legal determination for me and if you think you represent me you are fired." Plaintiff also attached a "Declaration of Independence By Public Notice" prepared by Defendant Muncy in which Defendant Muncy declares "I, am not a party to the Constitution of the United States of America; Therefore, I am not a citizen under the terms of the 14th amendment to the Constitution for the United States of America" and "I, am a man and a living soul, and am NOT a legally created person . . . ."

[8]Doc. No. 68.

[9]*Id*.

[10]*Id*.

[11]*Id*.

the Home by quitclaim deed to GJ Foundation[12] for $10 consideration. The Brandons acknowledged signing papers that Defendant Muncy requested they sign, but did not know that the papers they signed conveyed the property.[13] Apparently, Mr. Brandon believed that his signature was needed to take him off of "[s]ome kind of a trustee or a board or something . . . ."[14]

Defendant Muncy and his wife bought the 18 Acres in November, 1997.[15] On December 29, 1997, Defendant Muncy allegedly transferred the property for $1.00 to his son, Timothy Muncy.[16] Timothy Muncy then allegedly transferred the property to TAM Holdings, an entity established and run by Defendant Muncy.[17] During his deposition, however, Timothy Muncy said that the signature on the deed conveying the property to him was not his signature, and that he believed he still owned the 18 Acres.[18] Defendant Muncy still uses the 18 Acres -- he has a barn on the property and storage sheds, in which he stores "junk," hay, and in which his wife stores her "mule," a Kawasaki all terrain vehicle.[19]

---

[12]Defendant Muncy established the GJ Foundation and has signature rights to the GJ Foundation bank account.

[13]Doc. No. 68.

[14]*Id*.

[15]*Id*.

[16]*Id*.

[17]*Id*. TAM Holdings was established by Defendant Muncy on March 31, 1999. Plaintiff alleges that TAM Holdings is a sham trust used to hide assets from the IRS and hinder IRS collection efforts. Defendant Muncy's son, Timothy Muncy, was named as managing director of the trust. Timothy Muncy, however, never acted as managing director. Rather, Defendant Muncy managed TAM Holdings.

[18]*Id*.

[19]Doc. No. 68.

Defendant Muncy allegedly sold the Five Acres to his son, Jason Muncy, for $10.00 on March 27, 2000.[20] On July 10, 2000, Douglas and Denise Carlson allegedly bought the Five Acres from Jason Muncy.[21] The Carlsons, however, testified at their deposition that Defendant Muncy represented that the Five Acres belonged to him.[22] The Carlsons paid Defendant Muncy several installment payments toward the purchase price of the land before they decided they could not afford to keep the property.[23] Douglas Carlson never thought he owned the Five Acres -- he believed the Five Acres still belonged to Defendant Muncy until the Carlsons finished paying for the land.[24] The Carlsons allegedly deeded the Five Acres to GJ Foundation, Castle Management, Inc., and others, for the consideration of $10.00, but Denise Carlson had never heard of these transferees until this lawsuit.[25]

Defendant Muncy, proceeding *pro se*, responded to Plaintiff's Motion, denying any alleged liability and asserting that Mr. Grayson Hoffman, Plaintiff's counsel, fraudulently filed this suit.[26] In various pleadings, Defendant Muncy asserts that he is not a "person" over which this Court has jurisdiction,[27] that he is not a federal employee and thus the government cannot levy against his property,[28] and that "[y]ou cannot force an 'American' into the jurisdiction of the

---

[20]*Id*.

[21]*Id*.

[22]*Id*.

[23]*Id*.

[24]*Id*.

[25]Doc. No. 68.

[26]Doc. No. 74.

[27]Doc. No. 21.

[28]Doc. No. 74.

'UNITED STATES' without their written permission, and signature. I did not give my permission."[29] Defendant Muncy requested the "indulgence of the court to be lenient as to procedure, due to the fact that I am not school in law . . . ."[30] Defendant Muncy's arguments are, however, "absurd."[31]

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[32] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[33]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[34] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[35] I must view the facts in the light

---

[29]Doc. No. 75.

[30]Doc. Nos. 75, 74.

[31]The Eighth Circuit described as "absurd" taxpayer's argument that "the Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution unlawfully purported to bestow citizenship upon non-white races and other 'artificial statutory persons.'" *United States v. Kruger*, 923 F.2d 587, 587-88 (8th Cir. 1991).

[32]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[33]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[34]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[35]*Id.* at 728.

most favorable to the party opposing the motion.[36] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[37]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[38]

**III. DISCUSSION**

A. Establishing Tax Liability

When a person does not file an income tax return, the Internal Revenue Service may assess the person's tax liability by using a substitute return.[39] A substitute return is *prima facie*

---

[36]*Id.* at 727-28.

[37]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[38]*Anderson*, 477 U.S. at 248.

[39]26 U.S.C. § 6020 reads, in relevant part:

> (b)(1) Authority of Secretary to execute return. If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
>
> (b)(2) Status of returns. Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

See also *United States v. Silkman*, 220 F.3d 935, 936 (8th Cir. 2000) (The Internal Revenue Service may use a substitute return to assess a person's tax liability when a taxpayer fails to file a return.))

evidence of a tax payer's tax liability.[40] An assessment is "entitled to a legal presumption of correctness . . . ."[41] "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made."[42]

Plaintiff included certified copies of the Certificates of Assessments, Payments, and Other Matters, for Form 1040 SFR, for tax years 1994, 1995, and 1996.[43] While Defendant Muncy denied any liability, he did not present evidence contradicting the information included in the assessments.[44] The record supports that the proper assessments were made.

B. Tax Lien

When a person fails to pay his tax liability after notice and demand, "the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."[45] A tax lien generally attaches when the tax assessment was made, and continues until either the tax liability is satisfied, or until the lien is unenforceable because of lapse of time.[46] To satisfy the

---

[40]26 U.S.C. § 6020.

[41]*United States v. Fior D'Italia*, 536 U.S. 238, 243 (2002) (citing *United States v. Janis*, 428 U.S. 433, 440 (1976)).

[42]*Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992), *United States v. Downing*, 66 Fed. Appx. 83, 84 (8th Cir. 2003).

[43]Doc. No. 68.

[44]See Doc. No. 74.

[45]26 U.S.C. § 6321; *Glass City Bank v. United States*, 326 U.S. 265, 267-68 (1945).

[46]26 U.S.C. § 6322; *United States v. Cent. Bank of Denver*, 843 F.2d 1300, 1306 (8th Cir. 1988).

lien, the IRS may levy on property that was fraudulently conveyed,[47] or on the assets of the taxpayer's alter ego.[48] Whether property was fraudulently conveyed is a question of state law -- "state, not federal, law creates the property and property rights to which the tax lien attaches."[49]

1. Fraudulent Transfers

Arkansas law provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor."[50] In determining actual intent, a court may consider, among other things, whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

"Transfers to a debtor's family are particularly suspect . . . ."[51]

---

[47]*Loving Saviour Church v. United States*, 728 F.2d 1085, 1086 (8th Cir. 1984).

[48]See *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977).

[49]*United States v. Schroeder*, 348 F.2d 223, 225 (8th Cir. 1965) (citing *United States v. Bess*, 357 U.S. 51, 55 (1958), *Commissioner of Internal Revenue v. Stern*, 357 U.S. 39 (1958)).

[50]Ark. Code. Ann. § 4-59-204(a)(1).

[51]*United States v. Bryant*, 15 F.3d 756, 758 (8th Cir. 1994) (debtors' "conveyance of substantially all their real and personal property to their children in trust, for nominal consideration, when litigation over substantial tax deficiencies and penalties was pending, exhibited all or virtually all of the indicia of fraud . . . .").

The transfers of both the 18 Acres and the Five Acres were made to Defendant Muncy's family for inadequate consideration. Defendant Muncy conveyed the 18 Acres to his son Timothy for the consideration of $1.00, and conveyed the Five Acres to his son Jason for $10.00. Based on those facts alone, the transfers appear "particularly suspect." Additionally, Defendant Muncy made the transfers after becoming aware of his alleged tax liability; the transfers -- together with the conveyance of the Home -- consisted of substantially all of Defendant Muncy's assests; and the properties were then further transferred to entities controlled by Defendant Muncy. Further, Defendant Muncy presented no evidence beyond his own statements to rebut Plaintiff's allegations that the transfers were fraudulent. The record supports a conclusion that the transfers were fraudulent.

The conveyance of Defendant Muncy's Home was also fraudulent. Defendant Muncy "sold" his Home after becoming aware of his alleged tax liability. After the "sale" of the Home, Defendant Muncy never moved out of the Home. While the conveyance was not made to a family member, the property was further transferred to an entity apparently controlled by Defendant Muncy. The "purchasers" of the Home did not believe they ever owned the Home because they did not finish paying for the property. The "purchasers" of the home had no knowledge that they conveyed the Home to GJ Foundation.

2. Alter Egos

To satisfy a tax lien, the government may levy on the assets of the taxpayer's alter ego.[52] "Alter ego means 'other self' -- where one person or entity acts like, or, for another to the extent

[52]*United States v. Scherping*, 187 F.3d 796, 801 (8th Cir. 1999) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977), *Horton Dairy, Inc. v. United States*, 986 F.2d 286, 291 (8th Cir. 1993).

that they may be considered identical."[53] Federal courts generally apply state law in determining if an entity is a taxpayer's alter ego.[54] Under Arkansas law, "the conditions under which [an entity] may be disregarded or looked upon as the alter ego . . . vary according to the circumstances of each case."[55] The Arkansas Supreme Court noted several "common instances" when an entity's form has been disregarded: when the entity was used to "1) evade the payment of income taxes, 2) hinder, delay, and defraud creditors, 3) evade a contract or tort obligation, 4) evade the obligations of a federal or state statute, and 5) perpetrate fraud and injustice generally."[56] Other evidence a court can consider in determining to disregard an entity's form is compliance with corporate law in connection with both form and practice,[57] pending litigation,[58] and if the "form has been illegally abused."[59]

Even if Defendant Muncy's transfers of land were not fraudulent, the government could levy against the properties held by GJ Foundation and TAM Holdings because those entities are alter egos of Defendant Muncy. Defendant Muncy established both GJ Foundation and TAM, he has signature rights to the entities' bank accounts, and he controlled both GJ Foundation and TAM Holdings. He conveyed the properties after becoming aware of his alleged tax liability.

---

[53]*Id*. (citing *Loving Saviour Church v. United States*, 556 F. Supp. 688, 691 (D.S.D. 1983)).

[54]*Id*. at 802.

[55]*K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, No. 07-741, 2008 Ark. Lexis 178, at *30-31 (Ark. Mar. 13, 2008) (citing *Anderson v. Stewart*, 366 Ark. 203 (2006)).

[56]*Anderson v. Stewart*, 366 Ark. 203, 207 (2006).

[57]See *Humphries v. Bray*, 271 Ark. App. 962, 967 (1981).

[58]*Winchel v. Craig*, 55 Ark. App. 373, 381-82 (1996).

[59]*Enviroclean, Inc. v. Arkansas Pollution Control & Ecology, Comm'n.*, 314 Ark. 98, 103 (1993).

The record supports a conclusion that he transferred the properties in an effort to evade paying income taxes. As alter egos, the government may levy against the assets held by GJ Foundation and TAM Holdings to satisfy Defendant Muncy's tax debt.

**CONCLUSION**

Viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact on which this case should proceed to trial. Defendant Muncy owes federal income tax for the years 1994, 1995, and 1996. Defendant Muncy's Home, 18 Acres, and 5 Acres were fraudulently transferred. The Home, 18 Acres, and 5 Acres are held by entities that are alter egos of Defendant Muncy. Because the transfers were fraudulent and the properties are held by alter egos of Defendant Muncy, the government's tax lien attaches to those properties, and the properties should be sold to satisfy Defendant Muncy's tax debt. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 67) is GRANTED. All other pending motions are DENIED as MOOT.

IT IS SO ORDERED this 7th day of May, 2008.

/s/ Wm. R. Wilson, Jr.____________
UNITED STATES DISTRICT JUDGE